UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:17-CV-23175-SCOLA
(CONSOLIDATED CASE NO. 1:17-CV-23176)

STEPHANE R. SHEHATA and
MICHAEL A. OLSON,

    Plaintiffs,

v.

SOBE MIAMI, LLC, d/b/a
PALACE BAR, a Florida limited
liability company, and
THOMAS J. DONALL, individually,

    Defendants.
_____/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Defendants, SOBE Miami, LLC d/b/a Palace Bar ("Palace") and Thomas J. Donall ("Donall") (collectively "Defendants"), by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, respectfully submit this motion for summary judgment and memorandum of law in support thereof.[1]

**SUMMARY OF ARGUMENT**

Plaintiffs, former severs at Palace, sued Defendants claiming they are owed certain minimum and overtime wages under the Fair Labor Standards Act ("FLSA"). Their lawsuits, which have now been consolidated, also included claims brought under 26 U.S.C. § 7434(a) for allegedly issuing Plaintiffs false information returns that Plaintiffs have now dismissed with

---

[1] Defendants filed a very similar dispositive motion in the case captioned *Aynour Soliman v. SOBE Miami, LLC, et al.*, case no. 16-cv-24943, which is presently pending before Judge Lenard.

prejudice [D.E. 23]. Palace is a restaurant/bar located in Miami Beach, Florida. Donall is the owner of SOBE Miami, LLC, which does business as Palace.

Defendants maintain, as commissioned employees working in a retail or service establishment, Plaintiffs were exempt, and therefore summary judgment is appropriate as to their overtime claims. Specifically, the FLSA exempts from its overtime provisions commissioned employees who: (1) work in a retail or service establishment; (2) earn more than 1.5 times the applicable minimum wage for every hour worked in a workweek in which overtime hours are worked; and (3) receive more than 50% of their income in a representative period from commissions, including mandatory service charges imposed by the employer. 29 U.S.C. § 207(i) ("§ 7(i)"). The undisputed evidence conclusively establishes that Plaintiffs satisfied this test and are exempt. They also consistently earned more than minimum wage.

In addition, summary judgment is also warranted on Plaintiffs' claims seeking individual liability against Donall, who they allege was their "employer" under the FLSA. Donall, however, was not Plaintiffs' employer as defined by the FLSA. Rather, Donall is the owner of Palace in name only and asserted virtually no operational control over it and certainly asserted no control over Plaintiffs. Thus, Donall should dismissed from this action.

For these reasons, Defendants respectfully request that this Court grant their motion for summary judgment and dismiss Plaintiffs' consolidated complaint in its entirety.

## FACTUAL BACKGROUND

For purposes of this motion, Defendants rely on their Statement of Undisputed Material Facts ("SUMF") pursuant to Local Rule 56.1(a), which is incorporated herein by reference.

## **SUMMARY JUDGMENT STANDARD**

A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is designed to dispose of meritless claims before engaging in a frivolous and costly trial. See, *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Thus, summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322; *see also Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983) (summary judgment should be granted when the moving party meets its burden in showing the absence of a genuine issue as to any material fact).

In considering a motion for summary judgment, the court is not required to, nor should it, "scour the record in search of the evidence that would defeat" the motion, this duty belongs to the non-moving party alone. *Lawrence v. Wal-Mart Stores, Inc.*, 236 F. Supp.2d 1314, 1322 (M.D. Fla. 2002) (citing *Celotex*, 477 U.S. at 324). To that end, the non-moving party must file affidavits, depositions, or other documents to persuade the Court that there are material facts in the case that must be presented to the jury. *Webb, et al. v. Athens Newspapers, Inc.*, 999 F. Supp. 1464, 1466 (11th Cir. 1998). Plaintiffs must identify disputed facts that could affect the outcome of their claims under governing law to satisfy the "materiality" requirement, and thereby preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Moreover, "mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment." *Louis-Charles*

*v. Sun Sentinel Co.*, 595 F. Supp.2d 1304, 1306 (S.D. Fla. 2008) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).

## ARGUMENT

**I.   PLAINTIFFS' OVERTIME CLAIMS FAIL BECAUSE THEY WERE EXEMPT UNDER § 7(i) OF THE FLSA.**

Whether an employee falls within the § 7(i) overtime exemption of the FLSA is a question of law that is ripe for this Court's resolution on summary judgment. *See Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001) (whether an employee's payments constituted commissions under § 7(i) "is an issue of law"); *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1174 (7th Cir. 1987) (affirming district court's order granting summary judgment for defendant because the hotel's banquet servers satisfied all requirements under § 7(i) of the FLSA).

Where, as here, the undisputed facts demonstrate that Plaintiffs were exempt from the FLSA's overtime requirements and were paid more than minimum wage, Defendants are entitled to summary judgment as a matter of law on each of Plaintiffs' wage claims. *Webb*, 999 F. Supp. at 1466 (granting summary judgment for the defendant on the grounds that employees were exempt under the FLSA); *Lee v. Ethan Allen Retail, Inc.*, 651 F. Supp. 2d 1361 (N.D. Ga. 2009) (granting defendant's motion for summary judgment because employee was exempt from FLSA's overtime requirements under § 7(i)).[2] Of significance, a defendant does not bear any heightened burden of proof in establishing the applicability of an exemption; a defendant need only prove the exemption applies by a preponderance of the evidence. *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 507 (7th Cir. 2007).

---

[2] *See also Louis-Charles*, 595 F. Supp. 2d 1304 (S.D. Fla. 2008) (granting summary judgment for defendant on the grounds defendant's employees were properly classified as exempt under the FLSA).

Generally, the FLSA's overtime provisions require employers to pay covered employees time-and-a-half (overtime) for all hours worked over forty in a workweek. *See* 29 U.S.C. § 207(a)(2009). These provisions, however, do not apply if the employee is exempt. Plaintiffs were exempt under § 7(i) of the FLSA, which applies to commissioned employees working in a retail or service establishment. Because the § 7(i) exemption was enacted to address inequities that can arise in paying overtime to commissioned employees, it is based on the method of compensation, rather than the duties of the employee. *e.g., Gieg v. DDR, Inc.*, 407 F.3d 1038, 1047 (9th Cir. 2005).

Indeed, three requirements must be satisfied to establish the applicability of the § 7(i) exemption: (1) the employee's regular rate of pay must exceed 1.5 times the applicable minimum wage for every hour worked in a workweek in which overtime hours are worked; (2) more than half of the employee's compensation for a representative period (not less than one month) must represent commissions on goods or services;[3] and (3) the employee must work in a "retail or service establishment." 29 U.S.C. § 207(i); *Mechmet, supra*, 825 F.2d at 1174. Here, as discussed below, all three requirements are satisfied.

**A. Plaintiffs' regular rate of pay exceeded 1.5 times the minimum hourly rate during their entire tenure with Palace whenever they worked more than 40 hours in a workweek.**

The undisputed facts conclusively establish that Plaintiffs' compensation exceeded 1.5 times the minimum hourly wage rate for every hour worked in a workweek in which overtime hours were worked. (SUMF at ¶¶ 54 and 92). The regular rate is calculated by dividing the total compensation received by the total hours worked. *See* 29 C.F.R. §778.118 (citing *Missel, supra*,

---

[3] The statute does not define "commission," but it is clear that the word need not be used for the exemption to apply. *Mechmet, supra*, 825 F.2d at 1177; *Klinedinst*, 260 F.3d at 1257; 29 C.F.R. § 779.416.

316 U.S. 572); *Klinedinst, supra*, 260 F.3d at 1256. Here, during the year 2016, the minimum hourly wage rate in Florida was $8.05 per hour and in 2017, it was $8.10 per hour. One and a half times the minimum hourly wage rate in Florida in 2016 was $12.08 per hour, and in 2017, it was $12.15 per hour. (SUMF at ¶¶ 12-15). The undisputed evidence (i.e., Palace's time and payroll records) establishes that Plaintiffs' regular rate of pay was "consistently and obviously higher than required to meet the test." (*See* Wage and Hour Field Operations Handbook, Section 21h03(a), Appendix Ex. F.) When this is the case, a week-by-week examination demonstrating that Plaintiffs never earned less than one-and-one-half times minimum wage is not required to comply with this element of § 7(i). *See id.* (a "week-by-week determination of the regular rate for purposes of section 7(i) is not necessary if the earnings are consistently and obviously higher than required to meet the test"). However, Plaintiffs never earned less than $12.08 or $12.15 per hour during their entire tenure.[4] In fact, the least Shehata earned in any workweek where he worked more than 40 hours was $22.97 per hour, and the least Olson earned in any workweek where he worked more than 40 hour was $15.62 per hour. (SUMF at ¶¶ 54 and 92) This is more than the minimum wage rate of $8.05 per hour in 2016 and $8.10 per hour in 2017. It is also more than 1.5 times the minimum wage rate of $12.08 in 2016 and $12.15 in 2017. As such, Plaintiffs satisfy this requirement.

**B.    Commissions represent more than half of Plaintiffs' compensation.**

Plaintiffs satisfied the second requirement of the § 7(i) exemption because they each earned more than 50% of their income from the automatic service charges added to every customer's bill, which qualify as commissions under § 7(i). A "service charge" added by Palace to every customer's bill, and then distributed (in whole or in part) to its staff is properly classified as a

---

[4] *See* SUMF at ¶¶ 54 and 92.

"commission," and not a gratuity under the FLSA. *Nascembeni v. Quayside Palace Partners, LLP*, 2010 WL 2351467*2 (S.D. Fla. June 11, 2010). Further, a "service charge" is a commission despite the fact the parties may describe it colloquially as a gratuity or a tip. *Id.* (explaining that a service charge is not a tip if the customer had no discretion of whether to pay it or not). This conclusion is consistent with the United States Department of Labor's ("DOL") own internal guidelines.[5] In the Wage and Hour Division's Field Operations Handbook, the DOL states that a

> service charge levied on its customers by an establishment e.g., hotel, motel, or restaurant, for services rendered by waiters, waitresses … may qualify as a 'commission' pursuant to Sec. 7(i) … because a service charge that is completely or partially paid to such employees is keyed to sales since it bears a direct relationship to the goods and services which the establishment sells, and it is a specific percentage of the bill presented to the customer….

A tip, in contrast, "is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer…" 29 C.F.R. § 531.52. For example, "a compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees, cannot be counted as a tip..." *See* 29 C.F.R. § 531.55(a).

Here, as confirmed by Plaintiffs, a 20% service charge was automatically added to every customer's check. (SUMF at ¶ 16). Palace then distributed a portion of this service charge to their servers, such as Plaintiffs. (SUMF at ¶ 20). Plaintiffs were also paid wages at the rates of $5.03 per hour in 2016 and $5.08 in 2017. (SUMF at ¶ 10). A review of Palace's time and payroll records show that Plaintiffs' portion of the automatic service charge (their commissions) were

---

[5] *See Klinedinst,* 260 F.3d at 1255 ("Although the Field Operations Handbook is not entitled to Chevron deference, we find it persuasive" regarding interpretation of "commissions" under § 7(i).) (footnote omitted).

always greater than the hourly wage rate paid to them. (SUMF at ¶¶ 94-95). For example, in May 2016, Shehata earned $701.95 in wages and $4,373.00 in commissions and Olson earned $769.59 in wages and $3,428.00 in commissions. (SUMF at ¶¶ 34-35 and 64-65). In December 2016, Shehata earned $606.00 in wages and $2,910.00 in commissions and Olson earned $613.66 in wages and $2,489.00 in commissions. (SUMF at ¶¶ 49-50 and 79-80). As such, as a matter of law, more than 50% of Plaintiffs' total earnings were in the form of commissions.

    **C.**    **Palace is a retail or service establishment.**

Palace is a "retail or service establishment" under the FLSA. To establish that Plaintiffs were employed in a "retail or service establishment" Defendants must show: (1) 75% of the annual revenue generated is not from services or goods that are provided for resale;[6] and, (2) the services provided are recognized as "retail sales or services" in the particular industry. 29 U.S.C. § 213(a)(2) (repealed 1990).[7] As demonstrated below, Congress, federal courts, and the DOL have made clear that restaurant servers are employed in a "retail or service establishment."

When Congress amended the definition of a "retail or service establishment" to better define those entities that fell within the definition, it expressly identified restaurants as establishments covered by the definition. During the debate regarding the amendment, when asked what type of service establishments would be exempt, the chief sponsor of the amendment, Senator Holland, expressly stated restaurants were covered. 95 Cong. Rec. 12505 (1949) ("Generally, restaurants, hotels … and other establishments performing local services."). Thus, the term "retail or service establishment" includes restaurants. Of significance, DOL regulations provide that the

---

[6] This technical element is not in dispute.
[7] No statutory definition of "retail or service establishment" currently exists. When it passed § 7(i) in 1961, Congress specifically stated that "retail or service establishment" was to be given the same meaning as the term in § 213(a)(2). Although the definition of this term in § 213(a)(2) was repealed in 1990, courts still use this definition in applying § 7(i) because no congressional intent has been shown to modify the definition. *See Reich v. Delcorp., Inc.,* 3 F.3d 1181, 1183 (8th Cir. 1993); *Reich v. Cruises Only, Inc.,* 1997 U.S. Dist. LEXIS 23727 at *7 (M.D. Fla. 1997).

legislative history is the first source that should be examined in determining whether the service is "recognized" as a service establishment. 29 C.F.R. § 779.326. The legislative history here is dispositive that restaurants are retail or service establishments.

Finally, the DOL has further confirmed this legislative intent by identifying restaurants as touchstone examples of what Congress intended when it drafted the words "retail or service establishment." 29 C.F.R. §779.314 ("services rendered by establishments which are traditionally regarded as local retail service establishments such as the restaurants, hotels … It is to these latter services only that the term 'service' refers."). Additionally, the DOL provides a partial list of establishments whose goods or services may be recognized as retail, including "auto dealerships, restaurants, hotels, book stores, clothing stores, grocery stores, and furniture stores." 29 C.F.R. § 779.320.

The legislative history, judicial interpretation, and administrative pronouncements all demonstrate Congress' manifest intent that restaurants be considered retail and service establishments and that a restaurant's sales be considered retail for purposes of the FLSA. When, as here, the legislative history clearly establishes that Congress intended a particular industry to be a retail or service establishment, the court's inquiry is concluded. S*ee, e.g., Hodgson v. Duke University, supra*, 460 F.2d at 174-76; *Hodgson v. Crotty Bros. Dallas, Inc.,* 450 F.2d 1268, at 1280-81 and n. 31. Palace is a restaurant/bar. (SUMF at ¶ 2.) Consequently, it is, as a matter of law, a "retail or service establishment" under the FLSA.

Therefore, because the undisputed facts establish that Plaintiffs were exempt from the overtime provisions of the FLSA under the § 7(i) exemption and that they were paid more than the applicable minimum wage, this Court should enter summary judgment in Defendants' favor and dismiss Plaintiffs' FLSA claims.

**II. PLAINTIFFS' CLAIMS FOR MINIMUM WAGE AND OVERTIME VIOLATIONS AGAINST DONALL FAIL BECAUSE THE UNDISPUTED FACTS DEMONSTRATE THAT HE WAS NOT AN "EMPLOYER" WITHIN THE MEANING OF THE FLSA.**

In order for Donall to be individually liable for violating the overtime and minimum wage provisions of the FLSA, he must be an "employer" as that term is defined by the FLSA. *See* 29 U.S.C. § 206(a). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee.…" *See* 29 U.S.C. §203(d). Individuals as well as business entities are included in the FLSA's definition of "person." *See id.* at §203(a).

In determining whether an individual is an "employer," courts have long assessed the economic reality of the relationship between the employee and the alleged employer. *See Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961); *Patel v. Wargo*, 803 F.2d 632, 635 (11th Cir. 1986). Where a corporate officer, such as Donall, does not exercise operational control over the entity he is not considered an "employer" under the FLSA. *See Alvarez-Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1161 (11th Cir. 2008); *Patel,* 803 F.2d at 638. Indeed, most cases finding corporate officers liable for FLSA violations have involved wide underpayment of large numbers of workers, *e.g., Donovan v Grim Hotel*, 747 F.2d 966, 972 (5th Cir. 1984) (177 employees); *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983) (99 employees). To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee. *Patel*, 803 F.2d at 638.

Here, Donall had no direct responsibility for the Plaintiffs and he was he involved in the day-to-day operation of Palace. (SUMF at ¶¶ 4 and 9). He went to Palace once a week to check in with the general manager who was running the business, which is not the equivalent of running the day-to-day operation of Palace. He ran the creative part and the general manager ran the business part of it. (SUMF at ¶ 5). This is not a case of wide underpayment of large numbers of

workers. It is a case of two employees over whom Donall exercised absolutely no control. (SUMF at ¶ 9). Donall was not Plaintiffs' employer and he should not be held accountable as such.

In analyzing whether Donall was involved in the fay-to-day operation of Palace, the Court should focus on the actual role Donall played at Palace instead of the theoretical role he could have played due to his position as the owner of SOBE Miami, LLC. *See Patel*, 803 F.2d at 638; *Perez*, 515 F.3d at 1161. While no specific test for operational control has been delineated, courts have determined that "operational control includes things like determining employee compensation, supervising employees, and having the power to hire or fire employees." *Phillips v. M.I. Quality Lawn Maint., Inc.*, No. 10-20698-CIV-SEITZ/O'SULLIVAN, 2011 U.S. Dist. LEXIS 14325, at *8 (S.D. Fla. Feb. 14, 2011) (citing *Perez*, 515 F.3d at 1160-61).

Using the aforementioned factors, it is clear that there is no basis for holding Donall individually liable under the FLSA. ***Donall did not hire Plaintiffs, he did not supervise them, set their pay, make their schedules, or terminate their employment with Palace.*** (SUMF at ¶ 9.) In fact, the record is clear that Donall did not involve himself in the management of Palace other than with respect to the hiring and firing of the general manager, but instead served as the owner of the business in name only acting as the creative side for the business. (SUMF at ¶¶ 4-5.) Such a factual scenario is not sufficient to establish that he acted as an "employer" under the FLSA.

Indeed, courts in the Eleventh Circuit have unanimously held that merely being named an officer or director is not sufficient to establish individual liability under the FLSA. For example, in *Patel*, *supra*, the Eleventh Circuit held that a defendant who was the president, director, and a principal stockholder of a company sued for overtime violations was not an "employer" under the FLSA, because he did not "have operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an

employee." *Patel*, 803 F.2d at 637-38. Although the Eleventh Circuit acknowledged that the defendant, **could** have played a greater role, rather than deal with theoretical control or conjecture, the Court focused on the actual role the defendant played with the company. *Id*. Taking the same approach here leads inescapably to the conclusion that Donall was not an employer as that term is defined by the FLSA.

Another instructive case is *Escobar v. Orlando Brewing Partners, Inc.*, Case No. 6:05-cv-64-Orl-KRS, 2005 U.S. Dist. LEXIS 30709 (M.D. Fla. Dec. 5, 2005). In *Escobar*, an employer's ex-wife was *named* as a defendant in an action under the FLSA for overtime violations. *Id*. at 2-3. There, plaintiff alleged that the ex-wife was an "employer" under the FLSA solely by virtue of her being listed on the articles of incorporation as an officer of the company and because she occasionally performed minor clerical duties for the employer, such as writing checks. *Id*. In holding that the ex-wife was not an "employer" under the FLSA, the Court reasoned:

> Here, the evidence on record indicates that Jants was an **officer in name only.** She **did not** direct the day-to-day operations of the business, did not set employee schedules, **did not** contract with vendors or employees, and could not hire or fire employees. Her entire contact with the business was limited to writing checks on the corporate account. While she wrote checks for Escobar, there is no evidence that she had any authority to determine whether he should be paid or the amount to be paid. In other words, **she had little or nothing to do 'in relation to' Escobar as an employee.** 29 U.S.C. § 203(e). Because Jants had so little to do with the operation of the business, I conclude that **she 'did not take such an active role as to be held personally responsible' for any alleged violations of the FLSA.**

*Id.* at 7. (emphasis added). Thus, because the ex-wife was an officer in name only, and had minimal involvement with the company, she was found not be an employer under the FLSA and summary judgment was granted in her favor. *Id*.

A similar result is compelled here. Donall did not involve himself in the day-to-day operations of Palace and he did not have any responsibility for the supervision of Plaintiffs. He did not hire or fire employees other than the general manager. (SUMF at ¶ 7.) He did not supervise employees, and he did not determine employee compensation. (SUMF at ¶¶ 8-9.) Instead, like the defendants in *Escobar* and *Patel*, *supra*, Donall is the owner of SOBE Miami, LLC – essentially an officer or director in name only – which is not sufficient to establish liability as an "employer" under the FLSA. *Id*. Accordingly, because Plaintiffs cannot establish that Donall was an "employer" as that term is defined under the FLSA, summary judgment is warranted on Plaintiffs' claims against Donall.

## CONCLUSION

Based on the foregoing undisputed material facts, authority, and arguments, Defendants respectfully request this Court grant their motion for summary judgment, enter judgment in favor of Defendants, award them attorney's fees and costs as well as all other relief deemed just and proper.

By: /s/ Jamie B. Dokovna
Jamie B. Dokovna, Esq.
Florida Bar No. 592722
BECKER & POLIAKOFF, P.A.
Counsel for Defendants
625 N. Flagler Drive, 7th Floor
West Palm Beach, FL  33401
Telephone:  (561) 655-5444
Facsimile:  (561) 832-8987
jdokovna@bplegal.com
bmichenfelder@bplegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of February 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

BECKER & POLIAKOFF, P.A.
Attorneys for Defendants
625 N. Flagler Drive, 7th Floor
West Palm Beach, FL  33401
Telephone:  (561) 655-5444
Facsimile:  (561) 832-8987
jdokovna@bplegal.com
bmichenfelder@bplegal.com

By:  /s/  Jamie B. Dokovna
       Jamie B. Dokovna, Esq.
       Florida Bar No. 592722

## SERVICE LIST

**Roderick V. Hannah, Esq.**
RODERICK V. HANNAH, ESQ., P.A.
8751 West Broward Blvd, Suite 303
Plantation, FL  33324
rhannah@rhannahlaw.com
*Counsel for Plaintiff*

**Pelayo M. Duran, Esq.**
LAW OFFICE OF PELAYO DURAN, P.A.
4640 N.W. 7th Street
Miami, FL  33126-2309
pduran@pelayoduran.com
kflynn@rhannahlaw.com
mperez@pelayoduran.com
*Co-Counsel for Plaintiff*

ACTIVE: P23750/385824:10600228_1