United States District Court
for the
Southern District of Florida

| Stephane R. Shehata and Michael A. Olson, Plaintiffs, | ) ) ) |  |
|---|---|---|
| v. | ) ) ) ) | Civil Action No. 17-23175-Civ-Scola (Consolidated member case: 17-cv-23176-Scola) |
| Sobe Miami, LLC, dba Palace Bar, and Thomas J. Donall, Defendants. | ) ) |  |

### Order Denying Motion for Summary Judgment

Stephane R. Shehata and Michael A. Olson both worked as servers at Palace Bar in Miami Beach, Florida. They have sued Defendants Sobe Miami, LLC, doing business as Palace Bar, and Thomas J. Donall, the owner of the bar (collectively "Palace Bar"), for minimum-wage and overtime payment violations under the Fair Labor Standards Act.[1] Palace Bar claims entitlement to summary judgment on the Plaintiffs' overtime claims because the Plaintiffs are exempt employees under the FLSA. Defendant Donall also contends he cannot be held individually liable for any FLSA violations because he was not an "employer" as defined by the FLSA. The Plaintiffs counter that genuine issues of material fact preclude summary judgment on either basis. After a thorough review of the record, the Court agrees with the Plaintiffs and therefore **denies** Palace Bar's motion for summary judgment (**ECF No. 24**).

1. **Factual Background**

Olson worked as a server at Palace Bar from December 31, 2015 through May 20, 2017. (Pls.' Resp. ¶ 2, ECF No. 28, 1.) Shehata was also a server, within that same timeframe, from February 16, 2016 through January 24, 2017. (*Id.* at ¶ 1.) Donall owns the Palace Bar but the parties dispute the level of his involvement with the operation of the bar. (*E.g.*, *id.* at ¶¶ 4–5, 9.) The Palace Bar's general manager's responsibilities included managing its servers, bussers, food runners, and "housemen": hiring and firing them; determining their pay; setting their schedules; and generally supervising them. (*Id.* at ¶ 6.) All servers at the bar were paid an hourly wage plus three-quarters of a 20% charge that is added to every customer's bill. (*Id.* at ¶ 10.) The parties dispute whether this charge was mandatory or merely a suggestion. (*Id.* at ¶ 16–18.) In addition, servers kept any tips that customers might decide to leave on top of the 20% charge. (*Id.* at ¶¶ 11, 19.) The remaining quarter of the 20% charge

---

[1] The Plaintiffs also included in their complaints a third count for issuing fraudulent Internal Revenue Service W-2 forms. The parties have, however, jointly stipulated to the dismissal of that count. (Jt. Stip. of Dismissal with Prejudice, ECF No. 23.)

was divided among various other Palace Bar employees: one-fifth each to the host, the food runner, and the bartender; and the remaining two-fifths to the manager and the housemen (with the manager getting one-third and the housemen splitting the other two-thirds). (*Id.* at ¶¶ 21–23.)

The minimum wage in 2016 was $8.05 an hour. (*Id.* at ¶ 12.) The corresponding applicable cash wage for tipped employees in 2016 was $5.03 an hour. (*Id.*) In 2017 the minimum wage was $8.10 an hour and the corresponding applicable cash wage was $5.08 an hour. (*Id.* at ¶ 13.) Palace Bar paid both the Plaintiffs the minimum applicable cash wage for tipped employees for their regular hourly wages, plus their share of the 20% charge as well as any gratuity on top of that charge. (*Id.* at ¶¶ 12–13, 23–24.) Both the additional gratuity as well as the server's portion of the 20% charge were recorded on each server's pay stub as either "Reported Tips" or "Credit Card Tips." (*Id.* at ¶ 26.) Both of the Plaintiffs worked overtime hours from time to time. (*Id.* at ¶¶ 54, 92.) Their hourly wages combined with their additional pay amounts always amounted to at least one-and-a-half times the minimum wage for those overtime hours (anywhere between $15 to $52 an hour). (*Id.*)

## 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories, admissions on file and other documents, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson,* 477 U.S. at 249;

*Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.* "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

### 3. Analysis

Palace Bar argues it is entitled to summary judgment on the Plaintiffs' overtime claims because the Plaintiffs received commissions as part of their compensation and are therefore exempt from the FLSA's overtime requirements. Palace Bar, in its motion, does not expressly seek summary judgment on the Plaintiffs' minimum wage claims, but only obliquely incorporates these claims in some of their arguments. Donall also seeks summary judgment with respect to both claims against him, claiming that although he owns the bar, he was not the Plaintiffs' "employer" as defined under the FLSA.

### A. The Plaintiffs have presented genuine issues of material fact regarding Palace Bar's claim that they are exempt employees under the FLSA.

Palace Bar insists the Plaintiffs were commissioned employees and therefore it was not required to comply with the FLSA's overtime wage provisions. As set forth by Palace Bar, under the FLSA, this exemption is applied when three requirements are met: (1) the employee's regular rate of pay exceeds one and one-half times the minimum applicable hourly rate in a workweek in which overtime hours are worked; (2) more than half of the employee's compensation for a representative period (not less than one month) must represents commissions on goods or services; and (3) the employee must work in a "retail or service establishment." (Def.'s Mot. at 5 (citing 29 U.S.C. § 207(i) (the "§ 7(i) exemption")).) At the center of the parties' dispute, with respect to the exemption, is whether the charge that was added to customers' bills constitutes a "commission" for purposes of the § 7(i) exemption.[2]

Palace Bar maintains that the 20% service charge added to every customer's bill qualifies as a commission, and not a gratuity, for the purposes of applying the § 7(i) exemption. The FLSA does not itself define either "gratuity"

---

[2] With respect to the application of § 7(i), the Plaintiffs do not dispute that Palace Bar is a "retail or service establishment" or that they were compensated in excess of one and one-half time the minimum applicable hourly rate in workweeks in which they worked overtime hours. Presumably, then, both issues will be stipulated to for the purposes of trial. The parties also do not dispute that, if the service charge is indeed characterized as compulsory and is therefore a commission, the § 7(i) exemption applies to servers at Palace Bar.

or "commission." Its implementing rules, however, as Palace Bar points out, offer some guidance:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity.

29 C.F.R. § 531.52. Conversely, according to another regulatory provision, "[a] compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees, cannot be counted as a tip received."

Here, the Plaintiffs have presented evidence that the bar's customers were not necessarily required to pay the 20% charge. As set forth by the Plaintiffs, and unrebutted by Palace Bar, both the bar's corporate representative as well as Donall, "testified in deposition that the service charges . . . added to customer bills were *not* mandatory but were merely *suggested* tips that were always subject to the customers' discretion to pay." (Pls.' Resp. at 17.) Palace Bar also does not dispute that another server, Aynour Soliman, a plaintiff in a similar case before another court in this district, "testified . . . that customers were not required to pay the service charges that were added to the bills, and that a number of customers did, in fact, object to payment of the charges and had them removed." (*Id.*) The Plaintiffs also highlight that, at some point, the bar's menus themselves provided a notice informing patrons that, for their "convenience," the bar adds a "suggested 20% service charge to all . . . bills" but that they can "ask [their] server if [they] would like [the charge] to be removed." (*Id.* at 9, 17.)

Palace Bar does not dispute the Plaintiffs' characterization of any of these particular facts but instead recites the Plaintiffs' own testimony describing how the bar always added the 20% charge to customers' bills. Palace Bar argues that since it was not the customer's decision to have the charge added to the bill, and because the bar indeed added the charge to every bill, it could not possibly be a gratuity. The Court disagrees. The facts that the Plaintiffs allege amount to sufficient evidence upon which a reasonable juror could conclude that the service charge was discretionary. Indeed, as currently presented, it appears to the Court that the most likely inference would be that the charge was not, in fact, mandatory, notwithstanding Palace Bar's automatically adding it to every customer's bill.

Palace Bar's reliance on *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, (7th Cir. 1987) (Posner, J.) is misplaced. Palace Bar argues that, in

*Mechmet*, the Seventh Circuit did not take into account whether customers had any discretion regarding a hotel's service charge, applied to all large hotel-banquet bills, when it concluded that the charge should be considered a commission. But there, the Seventh Circuit had no occasion to evaluate whether the service charge was a tip or a commission because the plaintiffs in that case "concede[d] that the service charge [wa]s not a tip, since it [wa]s not discretionary with the customer." *Id.* at 1177. The question before the *Mechmet* court, instead, was whether the service charge, which the parties both agreed was not a gratuity, could be considered a commission under § 7(i). Here, in stark contrast, the Plaintiffs vigorously dispute Palace Bar's characterization of the service charge as a commission.

Contrary to Palace Bar's insistence, the automatic application of the charge to all checks, which is undisputed, is not dispositive. Palace Bar has presented no case law, nor has the Court been able to find any, that supports its contention that a charge applied like this can *never* be considered a gratuity. And, in fact, other courts have indicated that whether the charge should be considered a commission or gratuity turns not on whether the charge is automatically applied to every bill, but, rather, on whether the customer ultimately has any discretion in paying the bill. *See, e.g., Nascembeni v. Quayside Place Partners, LLP*, No. 09-23322-CIV, 2010 WL 2351467, at *2 (S.D. Fla. June 11, 2010) (Cooke, J.) (where the court's analysis hinged on whether the service charge at issue "was non-negotiable, in other words, the . . . customers had no discretion as to whether to pay the service charge or not"); *Virgin v. Escalante-Black Diamond Golf Club, LLC*, No. 5:13-CV-359-OC-10PRL, 2014 WL 12591472, at *1 (M.D. Fla. Aug. 4, 2014) (noting issues of fact with respect to whether a monthly membership fee and an 18% service charge applied to all food and drink bills were gratuities); *Cachola-Bonilla v. Wyndham El Conquistador Resort & Country Club*, 577 F. Supp. 2d 566, 573 (D.P.R. 2008) (finding an issue of fact where there was a question as to whether an assessed fee was "a compulsory service charge or whether it [wa]s indeed a 'disguised' tip"). Most notably, the other court in this district assessing this same issue has denied summary judgment on these same grounds. *Soliman v. SOBE Miami, LLC*, No. 16-24943-CIV, 2018 WL 2229129, at *5 (S.D. Fla. May 14, 2018) (Lenard, J.) (denying the same defendants' motion for summary judgment because they failed to establish the service charge was in fact mandatory despite its application to every check).

Finally, although whether the service charge qualifies as a commission under § 7(i) is, as the parties agree, a question of law, whether the service charge was mandatory or discretionary hinges on factual determinations. And, in order to determine these "facts" in Palace Bar's favor, the Court would have to weigh the evidence the parties have presented and make impermissible

findings of fact. The evidence presented by the Plaintiffs thus precludes the entry of summary judgment in Palace Bar's favor.[3]

### B. The Plaintiffs have presented genuine issues of material fact regarding whether Donall was an "employer" under the FLSA.

In order for Donall to be individually liable for violations of the overtime and minimum wage provisions of the FLSA, he must be an "employer" as that term is defined under the act. 29 U.S.C. § 206(a). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "[T]o support individual liability, there must be control over significant aspects of the company's day-to-day functions, including compensation of employees or other matters in relation to an employee." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1314 (11th Cir. 2013) (quotations and alterations omitted). "[W]hile control need not be continuous, it must be both substantial and related to the company's FLSA obligations." *Id.* Donall claims the undisputed facts demonstrate he was not an employer as defined under the FLSA.

In support of his position, Donall points to a declaration he submitted in support of his motion for summary judgment as well as the Plaintiffs' own testimony. In his declaration, Donall says he does "not assert any real control over operations even though [he has] the ability to do so." (Donall Decl. ¶ 4, ECF No. 25-2, 2.) He also says the only operational decisions he is involved in are hiring and firing the general manager and determining that manager's pay. (*Id.* at ¶ 5.) Donall also maintains he did not hire or fire the Plaintiffs, did not set their pay or schedules, and did not direct their work in any way. (*Id.* at ¶ 10.) According to Donall, Palace Bar's general manager, and not Donall, was responsible for making operational decisions: hiring and firing servers, bussers, food runners, and housemen; determining employees' pay; setting their schedules; and supervising them. (*Id.* at ¶¶ 6–7.) Shehata's deposition testimony was largely consistent with Donall's declaration in that he said Palace Bar's manager hired him and set his pay and schedule. (Shehata Dep., ECF No. 25-3.) Shehata also testified that Donall was not involved in setting employee schedules or pay and that the manager was responsible for terminating employees. (Shehata Dep. 32:23 – 33:17.) The only testimony from Olson that Donall relies on is Olson's explanation that Palace Bar's manager fired him for insubordination. (Olson Dep. 46:22–25, ECF No. 25-4, 11.)

---

[3] The Plaintiffs submit that, in the event it is determined the service charge actually is a commission, Palace Bar should nonetheless be prevented from availing themselves of § 7(i)'s exemption because, under Florida law, Palace Bar's application of the automatic charge was illegal. The Court finds the requested relief improperly presented in the Plaintiffs' response and declines to address the issue, especially in light of the Court's denial of Palace Bar's motion for summary judgment on this ground.

The Plaintiffs, on the other hand, have presented evidence that directly contradicts Donall's description of his involvement with running the bar. The testimony of one of Palace Bar's managers, Fekrim Haxhaj, is directly at odds with Donall's characterization of his role. For example, Haxhaj testified that Donall was actively involved in the every-day operations of the bar, including its financial aspects, service, and hiring and firing staff. (Haxhaj Dep. 45:18–24, ECF No. 28-1, 18.) Haxhaj also maintained that Donall was involved in making pay decisions. (*Id.* at 46:19–22.) The Plaintiffs have also submitted Donall's own deposition testimony, from the other case pending against him in this district, that contradicts his declaration. In that testimony, Donall stated that he went to the bar "at least" once a week. (Donall Dep. 22:3–4.) He also described being consulted by managers about firing decisions. (*Id.* at 29:18–20.) Additionally, Donall said, in that deposition, that his role in the business involved supervising the work of the bar's general manager as well as its assistant managers. (*Id.* at 22:5–21.) Further, the Plaintiffs have pointed to Donall's answer, filed in response to the complaint in the other case, where Donall affirmatively admits that he was the plaintiff server's "employer." (Pls.' Resp. at 14.) Donall has not objected to the Plaintiffs' reliance on any of this evidence in opposing his motion for summary judgment.

Based on the conflicting versions of the depth of Donall's involvement in Palace Bar's operation, summary judgment in Donall's favor is not warranted. In viewing the evidence in the light most favorable to the Plaintiffs, the Court finds a reasonable fact finder could conclude that Donall was in charge of day-to-day operations, exercising supervision of the employees at Palace Bar. *See, e.g., Olivas v. A Little Havana Check Cash, Inc.*, 324 F. App'x 839, 846 (11th Cir. 2009) (remanding for a jury trial on the issue of whether a defendant company owner was an "employer" under the FLSA where conflicting testimony could allow a reasonable person to conclude that the defendant was in fact an "employer").

### 4. Conclusion

Based on the evidence presented by the Plaintiffs, the Defendants are not entitled to summary judgment regarding the Plaintiffs' overtime claims or their claims against Donall individually. Further, to the extent Palace Bar seeks summary judgment with respect to the Plaintiffs' minimum-wage claims, that is also denied. Palace Bar raises this issue only in passing and its argument appears, in any event, to hinge on a determination that the service charge was a commission—which has not been established, at least at this point. The Court

thus **denies** Palace Bar's motion for summary in its entirety (**ECF No. 24**).

**Done and ordered** at Miami, Florida, on June 14, 2018.

_____
Robert N. Scola, Jr.
United States District Judge